UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JERRY VALE JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | 15 C 128 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| CITY OF CHICAGO, a municipal corporation, CHICAGO POLICE OFFICER STEVE JAROSZ, Star No. 6803, and ANITA ALVAREZ, Cook County State's Attorney, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Jerry Johnson brings this *pro se* suit against the City of Chicago and Chicago police officer Steve Jarosz. Construed liberally, the operative complaint alleges false arrest and conspiracy under 42 U.S.C. § 1983 and malicious prosecution under Illinois law. Doc. 59. (The complaint purports to name Anita Alvarez, the State's Attorney of Cook County, as a defendant, but Johnson formally withdrew his claims against her early in the case, Doc. 13, and he will be held to that decision.) Jarosz and the City have moved for summary judgment, and Johnson has cross-moved for summary judgment. Docs. 107, 113, 118, 147. Jarosz's motion is granted, the City's motion is granted in part and denied in part, and Johnson's motions are denied.

**Background**

Consistent with Local Rule 56.1(a)(3), Jarosz filed a statement of undisputed facts along with his summary judgment motion. Doc. 109. The City adopted Jarosz's statement as its own for the purposes of its summary judgment motion. Doc. 119 at 2. Local Rule 56.1(b)(3)(B) required Johnson to respond to the Defendants' Local Rule 56.1(a)(3) statement. *See* N.D. Ill. L.R. 56.1(b)(3)(B) (requiring a "concise response to the movant's statement that shall contain …

1

a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon"). Despite having been served with a Local Rule 56.2 Notice, Doc. 110, which explained in detail the requirements of Local Rule 56.1, Johnson did not respond as required. Johnson did file three briefs in opposition to summary judgment, but none include a Local Rule 56.1(b)(3)(B) response. Docs. 115, 129, 134.

Johnson's status as a *pro se* litigant does not excuse his failure to comply with Local Rule 56.1(b)(3)(B). *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 F. App'x 642, 643 (7th Cir. 2011) ("Though courts are solicitous of pro se litigants, they may nonetheless require strict compliance with local rules."); *Wilson v. Kautex, Inc.*, 371 F. App'x 663, 664 (7th Cir. 2010) ("[S]trictly enforcing Local Rule 56.1 was well within the district court's discretion, even though Wilson is a pro se litigant.") (citations omitted); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) ("[E]ven pro se litigants must follow rules of civil procedure."). Given Johnson's failure to comply with Local Rule 56.1(b)(3)(B), the facts set forth in Defendants' Local Rule 56.1(a)(3) statement are deemed admitted. *See* N.D. Ill. L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880, 884 (7th Cir. 2012); *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010); *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 393 (7th Cir. 2009); *Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643-44 (7th Cir. 2008); *Raymond v. Ameritech Corp.*, 442

F.3d 600, 608 (7th Cir. 2006); *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 943-44 (7th Cir. 2005); *Smith v. Lamz*, 321 F.3d 680, 682-83 (7th Cir. 2003).

The court will consider Johnson's Local Rule 56.1(b)(3)(C) statement of additional facts. Doc. 134 at 6-8. In addition, because Johnson is *pro se*, the court will consider the Local Rule 56.1(a)(3) statements that he filed to support his own summary judgment motions as further Local Rule 56.1(b)(3)(C) statements of additional facts in opposition to Defendants' summary judgment motions. Doc. 113-1; Doc. 147-2. That said, the court will not consider assertions in Johnson's Local Rule 56.1(b)(3)(C) statements to the extent they are not adequately supported by specific references to the record. Nor will the court allow Johnson's Local Rule 56.1(b)(3)(C) statements to serve the function of what should have been his Local Rule 56.1(b)(3)(B) response to Defendants' Local Rule 56.1(a)(3) statement. As noted, Local Rule 56.1(b)(3)(B) requires the non-movant to file "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." N.D. Ill. L.R. 56.1(b)(3)(B). The non-movant's submission of a Local Rule 56.1(b)(3)(C) statement does not and cannot properly controvert "each numbered paragraph" of the movant's Local Rule 56.1(a)(3) statement, as it does not sync up with the factual assertions in the Local Rule 56.1(a)(3) statement.

The Seventh Circuit held as much in *Ciomber v. Cooperative Plus, Inc.*, *supra*. The plaintiff in *Ciomber*, who was injured when his house exploded, brought a negligence suit against the company that supplied him with liquefied petroleum. 527 F.3d at 637. The defendant moved for summary judgment. *Id*. at 639. In support of his opposition, the plaintiff filed a "Rule 56.1 response … that … did not separate his proposed facts from his responses to [the defendant's] proposed material facts." *Id*. at 643. "[T]he district court refused to consider

3

the facts proposed in [the plaintiff's] Rule 56.1 response," and the Seventh Circuit affirmed, holding that because the response did not comply Local Rule 56.1(b)(3)(B), which requires "a response to each numbered paragraph in the moving party's statement," the district court "did not err by refusing to consider the facts [the plaintiff] proposed." *Id*. at 643-44.

The same result obtains here. The Seventh Circuit "has consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Flint v. City of Belvidere*, 791 F.3d 764, 767 (7th Cir. 2015) (citing cases); *see also Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings."). Here, the problem is not that Johnson did not *strictly* comply with Local Rule 56.1(b)(3)(B); rather, it is that he did not comply *at all*. This court need not and will not attempt to map the factual assertions in Johnson's Local Rule 56.1(b)(3)(C) statements onto the factual assertions in Defendants' Local Rule 56.1(a)(3) statement to determine whether Johnson has adduced a genuine dispute of material fact as to any of Defendants' assertions; that is the purpose of a properly constructed Local Rule 56.1(b)(3)(B) response. *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015) ("The purpose of Rule 56.1 is to have the litigants present to the district court a clear, concise list of material facts that are central to the summary judgment determination. It is the litigants' duty to clearly identify material facts in dispute and provide the admissible evidence that tends to prove or disprove the proffered fact. A litigant who denies a material fact is required to provide the admissible evidence that supports his denial in a clear, concise, and obvious fashion, for quick reference of the court. The district court did not abuse its discretion in finding Curtis failed to comply with

4

requirements."); *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) ("Because of the important function local rules like Rule 56.1 serve in organizing the evidence and identifying disputed facts, we have consistently upheld the district court's discretion to require strict compliance with those rules."). Accordingly, the court accepts as true the facts set forth in Defendants' Local Rule 56.1(a)(3) statement. *See Curtis*, 807 F.3d at 218 ("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion."); *Parra*, 614 F.3d at 636; *Rao*, 589 F.3d at 393.

The following facts are stated as favorably to Johnson as the record and Local Rule 56.1 permit. *See Woods v. City of Berwyn*, 803 F.3d 865, 867 (7th Cir. 2015). In considering Defendants' summary judgment motions, the court must assume the truth of those facts, but does not vouch for them. *See Arroyo v. Volvo Grp. N. Am.*, 805 F.3d 278, 281 (7th Cir. 2015).

On August 2, 2013, Jarosz or his partner, Officer Ryan Harty, sent a radio broadcast that two suspects were fleeing a traffic stop. Doc. 109 at ¶ 10. That same day, Officer Armand Garza stopped Johnson on the street outside the District Six police station. *Id*. at ¶¶ 15-16. Garza patted down Johnson to search for weapons, whereupon Johnson informed Garza that he was carrying a firearm. *Id*. at ¶¶ 17-18; Doc. 140 at ¶ 5. The firearm was loaded, Doc. 109 at ¶ 12, and Johnson did not possess a Firearm Owner's Identification ("FOID") card, *id*. at ¶ 14. And Johnson was a felon, having been convicted of bank robbery. Doc. 134 at 7. Garza then handcuffed Johnson. Doc. 109 at ¶ 19.

After Garza discovered the firearm and handcuffed Johnson, Jarosz arrived and identified Johnson as one of the individuals who had fled the traffic stop, and after Johnson was brought to the police station, Jarosz completed an arrest report and case report. *Id*. at ¶¶ 24-27. Jarosz

5

spoke with an Assistant State's Attorney about filing charges for unlawful possession of a firearm, and after charges were approved, Jarosz signed a criminal complaint against Johnson for unlawful possession of a firearm. *Id*. at ¶¶ 32-34. Ultimately, Johnson was not charged with any act relating to the stopped vehicle; rather, he was indicted for being a felon in possession of a firearm. *Id*. at ¶¶ 35-36. After the state court granted Johnson's motion to suppress the firearm, the prosecutor requested that the charge be terminated via *nolle prosequi*, and the charge was so terminated. *Id*. at ¶¶ 37-39. The state court suppressed the firearm on the ground that Garza had no justification for stopping Johnson outside the police station; the state court's ruling did not mention Jarosz or anything that Jarosz had done. Doc. 113-5.

## Discussion

### I. False Arrest Claim

"To prevail on a claim of false arrest, the plaintiff must show there was no probable cause for his arrest." *Jackson v. Parker*, 627 F.3d 634, 638 (7th Cir. 2010). A showing of probable cause is thus "an absolute defense to any claim under § 1983 against police officers for wrongful arrest." *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006). "Probable cause exists if an officer reasonably believes, in light of the facts known to [him] at the time, that a suspect had committed or was committing an offense." *United States v. Reed*, 443 F.3d 600, 603 (7th Cir. 2006). Furthermore, "§ 1983 liability is premised on the wrongdoer's personal responsibility. An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional violation." *Kuhn v. Goodlow*, 678 F.3d 552, 555-56 (7th Cir. 2012) (internal quotation marks omitted). "[A]n official meets the 'personal involvement' requirement when she acts or fails to act with a deliberate or reckless disregard of plaintiff's rights or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and

6

consent." *Gossmeyer v. McDonald*, 128 F.3d 481, 494 (7th Cir. 1997) (internal quotation marks omitted).

The state court determined that the Garza's initial stop of Johnson violated the Fourth Amendment. Doc. 113-5. However, Garza is not a defendant in this case. Doc. 101 (order denying, for the reasons stated orally on the record, Johnson's motion for leave to amend his complaint to add Garza as a defendant). Jarosz is the sole individual defendant, and he seeks summary judgment on the ground that he was not present during Garza's initial stop of Johnson and bears no liability for that violation of Johnson's Fourth Amendment rights. Johnson does not respond to that argument, thus forfeiting the point. *See Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment."); *G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court."); *Salas v. Wis. Dep't of Corr.*, 493 F.3d 913, 924 (7th Cir. 2007) ("[A] party forfeits any argument it fails to raise in a brief opposing summary judgment.").

Jarosz prevails on the merits in any event. Jarosz was not present when the unlawful seizure occurred. True, Garza stopped Johnson after hearing Jarosz's report that a suspect was in flight, but there is no record evidence suggesting that Jarosz had any reason to expect that another officer, in a different location, would unlawfully seize somebody in response to the report. Jarosz bears no § 1983 liability for the initial seizure because he lacked the requisite personal involvement.

Jarosz's personal involvement, and thus his potential exposure to § 1983 liability, began when he arrived at the scene, after Garza had seized Johnson and placed him in handcuffs. The

7

question here is whether, under the circumstances, Jarosz's arrest of Johnson was supported by probable cause. "Probable cause is a fluid concept that relies on the common-sense judgment of the officers based on the totality of the circumstances." *United States v. Reed*, 443 F.3d 600, 603 (7th Cir. 2006). "In determining whether suspicious circumstances rise to the level of probable cause, officers are entitled to draw reasonable inferences based on their training and experiences." *Ibid*. Additionally, "[p]robable cause only requires that a probability or substantial chance of criminal activity exists; it does not require the existence of criminal activity to be more likely true than not true." *Mucha v. Vill. of Oak Brook*, 650 F.3d 1053, 1056-57 (7th Cir. 2011).

As noted, when Jarosz arrived at the scene, Johnson had been caught carrying a loaded weapon, and he did not present a FOID card. Based on those facts, it was reasonable for Jarosz to believe that Johnson had committed a crime, as carrying a loaded firearm in a public area violated Illinois criminal statutes then in effect. *See*, *e.g.*, 720 ILCS 5/24-1 (2013); 720 ILCS 5/24-1.6 (2013). Although the undisputed facts do not conclusively establish that Jarosz knew that Johnson lacked a FOID card, that does not alter the analysis.

To begin with, Johnson does not press an argument that Jarosz lacked probable cause because he did not know Johnson's firearm license status, and thus has forfeited that issue. *See Nichols*, 755 F.3d at 600; *G & S Holdings*, 697 F.3d at 538; *Salas*, 493 F.3d at 924. Also, as noted above, an officer may make reasonable inferences in assessing whether he has probable cause to arrest, and the fact that Johnson did not claim to possess a FOID card or concealed carry permit would allow an officer to reasonably infer that he did not have one. That inference provided ample support for Jarosz to conclude that a "probability or substantial chance" of criminal activity existed. *Mucha*, 650 F.3d at 1057.

In sum, Jarosz had a reasonable belief that Johnson was violating Illinois firearm laws, which meant that he had probable cause to arrest him. *See United States v. Shields*, 789 F.3d 733, 746 (7th Cir. 2015) ("[O]nce [the officer] saw [the defendant] remove a firearm from his pocket, he had probable cause to believe that [the defendant] had violated Illinois's statutory prohibition then in force against carrying firearms."); *United States v. Love*, 350 F. App'x 70, 71 (7th Cir. 2009) (finding probable cause to arrest for unlawful use of a weapon, 720 ILCS 5/24-1, where the officer saw a weapon in plain view in a vehicle); *Powell v. City of Berwyn*, 68 F. Supp. 3d 929, 937 (N.D. Ill. 2014) ("Officers had probable cause to arrest [plaintiff] for unlawful use of a weapon when they saw him carrying a gun on a public street."). And because there was probable cause, Johnson cannot prevail on his false arrest claim against Jarosz.

## II. Malicious Prosecution Claim

Johnson's malicious prosecution claim lies under Illinois law, not federal law. *See Howlett v. Hack*, 794 F.3d 721, 727-28 (7th Cir. 2015); *Ray v. City of Chicago*, 629 F.3d 660, 664 (7th Cir. 2011). In Illinois, the elements of a malicious prosecution claim are: "(1) the defendants commenced judicial proceedings, (2) for which there was no probable cause, (3) the proceeding were instituted or continued maliciously, (4) the proceedings were terminated in the plaintiff's favor, and (5) the plaintiff sustained an injury." *Saunders-El v. Rohde*, 778 F.3d 556, 561 (7th Cir. 2015). Jarosz contends that Johnson cannot meet the second element, a lack of probable cause.

Largely for the reasons set forth above, Jarosz is correct. Johnson was charged with violating 720 ILCS 5/24-1.6-a(3)(A-5) (2013), aggravated unlawful use of a weapon. Doc. 109-4 at 2. As noted, Johnson was in possession of a loaded weapon on a public way, yielding probable cause to pursue a prosecution. Furthermore, while having a valid FOID or concealed

carry permit could have negated probable cause, Johnson has not argued that he possessed either of these, and nor has he argued that Jarosz did not know that he lacked them. Accordingly, any such argument is forfeited.

Jarosz further contends, correctly, that Johnson cannot satisfy the fourth element, a favorable termination of the criminal proceedings. To be favorable, a termination must be "indicative of the innocence of the accused." *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996). To determine whether a termination is indicative of the accused's innocence, the court examines the circumstances, not the form or title, of the disposition of the criminal charges. *See Cult Awareness Network v. Church of Scientology Int'l*, 685 N.E.2d 1347, 1352-53 (Ill. 1997). Thus, the dismissal of charges is not indicative of innocence if the dismissal "is the result of an agreement or compromise with the accused, misconduct on the part of the accused for the purpose of preventing trial, mercy requested or accepted by the accused, the institution of new criminal proceedings, or the impossibility or impracticability of bringing the accused to trial." *Swick*, 662 N.E.2d at 1243.

The charges against Johnson were dismissed *nolle prosequi*, Doc. 109-6 at 4, after the trial judge suppressed evidence that a firearm was found on Johnson's person. Doc. 113-5. Given these circumstances, no reasonable jury could find that reasonable grounds to pursue the prosecution were absent. *See Washington v. Summerville*, 127 F.3d 552, 557 (7th Cir. 1997) ("The cessation of the criminal proceedings must compel an inference that reasonable grounds to pursue the criminal prosecution were lacking."); *Horan v. City of Chicago*, 2010 WL 2836729, at *8 (N.D. Ill. July 16, 2010) (holding that "the prior criminal proceeding was not terminated in a manner that indicated plaintiff's innocence" where "the narcotics found in plaintiff's apartment were discovered during an improper search and could not be used as evidence against plaintiff").

### III. Conspiracy Claim Against Jarosz

"To establish conspiracy liability in a § 1983 claim, the plaintiff must show that (1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). "[A] conspiracy claim cannot survive summary judgment if the allegations are vague, conclusionary and include no overt acts reasonably related to the promotion of the alleged conspiracy." *Amundsen v. Chicago Park Dist.*, 218 F.3d 712, 718 (7th Cir. 2000) (internal quotation marks omitted).

Jarosz presses several arguments for summary judgment on the conspiracy claim, and Johnson responds not at all, thereby forfeiting the claim. *See Nichols*, 755 F.3d at 600; *G & S Holdings*, 697 F.3d at 538; *Salas*, 493 F.3d at 924. The claim fails on the merits in any event. There is no record evidence that Jarosz and his alleged co-conspirator, State's Attorney Alvarez, actually agreed to violate his constitutional rights. Indeed, as Jarosz correctly notes, Doc. 108 at 12-13, Johnson has adduced no evidence even suggesting that Jarosz and Alvarez ever met or talked, let alone that they agreed to violate Johnson's constitutional rights. In the absence of such a threshold showing, Jarosz is entitled to summary judgment.

### IV. Indemnification Claim Against the City

Johnson seeks indemnification against the City based on its liability, under a *respondeat superior* theory, for Jarosz's alleged torts. In Illinois, local government liability is governed by the Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/1 *et seq*. Relevant here, 745 ILCS 10/2-109 states that "a local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." For the

reasons discussed above, Jarosz bears no liability here. Thus, a state law indemnification claim against the City based on Jarosz's liability necessarily fails.

## V. *Monell* Claim Against the City

In addition to his § 1983 claims against Jarosz and his indemnification claim against the City, Johnson also brings a § 1983 claim against the City. Doc. 59 at ¶¶ 38-44. Construing the complaint liberally, this claim is based on one or both of two allegations: that the City failed to properly train officers, *id*. at ¶¶ 39, 41, and that it had a policy of racial discrimination in arrests, *id*. at ¶ 40.

Under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), a municipality is not liable for constitutional violations of its employees based on a *respondeat superior* theory. *Id.* at 691. Rather, to recover from a municipality under § 1983, a plaintiff must allege that "a government's policy or custom" is responsible for the constitutional injury. *Id.* at 694. Moreover, a plaintiff must allege "that an official policy or custom not only caused the constitutional violation, but was the moving force behind it." *Estate of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 514 (7th Cir.2007) (internal quotation marks omitted). "An official policy or custom may be established by means of [1] an express policy, [2] a widespread practice which, although unwritten, is so entrenched and well-known as to carry the force of policy, or [3] through the actions of an individual who possesses the authority to make final policy decisions on behalf of the municipality or corporation." *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012); *see also Milestone v. City of Monroe, Wis.*, 665 F.3d 774, 780 (7th Cir. 2011). *Monell* liability may be based on failure to train officers, but only where "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

The evidence Johnson has adduced to support his *Monell* claim is lacking. But that is understandable given that the court, on the City's motion, stayed *Monell* discovery pending resolution of these summary judgment motions. Docs. 89, 128 (Schenkier, M.J.). It would be highly inequitable under the circumstances to hold that Johnson has not adduced evidence sufficient to withstand summary judgment on the *Monell* claim. And while summary judgment for Jarosz for *his* conduct forecloses *Monell* liability on the City arising from that conduct, it does not foreclose *Monell* liability arising from *Garza's* conduct because victory for Johnson on that *Monell* claim would not be inconsistent with summary judgment for Jarosz. *See Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010).

## VI. Johnson's Summary Judgment Motions

Johnson has moved for summary judgment as to liability on his claims. The motions are necessarily denied to the extent summary judgment has been granted to Defendants. As to the one claim that survives, the *Monell* claim against the City, Johnson has not established on the summary judgment record that he is entitled to judgment as a matter of law. Accordingly, Johnson's summary judgment motions are denied.

## Conclusion

For the foregoing reasons, Jarosz's summary judgment motion is granted, the City's summary judgment motion is granted in part and denied in part, and Johnson's summary judgment motion is denied. This suit will proceed only on Johnson's *Monell* claim against the City arising from Garza's conduct.

September 23, 2016

United States District Judge