UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JERRY V. JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | 15 C 128 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

**M<small>EMORANDUM</small> O<small>PINION AND</small> O<small>RDER</small>**

Jerry Johnson brought this *pro se* suit against Chicago police officer Steve Jarosz and the City of Chicago, alleging that his August 2013 arrest violated the Fourth Amendment and Illinois law. Doc. 59. The court granted summary judgment on all claims against Jarosz and the state law claims against the City, but not on the *Monell* claim against the City. Docs. 150-151 (reported at 2016 WL 5341810 (N.D. Ill. Sept. 23, 2016)). After months of *Monell* discovery, the City moved for summary judgment. Doc. 227. The motion is granted.

**Background**

The City filed its summary judgment motion on August 18, 2017. The court set a standard 28-day response date of September 15. Doc. 237. Johnson did not respond to the City's motion or seek an extension. Given the court's ability and obligation to enforce deadlines, the motion is ready for decision. *See Flint v. City of Belvidere*, 791 F.3d 764, 768 (7th Cir. 2015) ("[C]ase management depends on enforceable deadlines … . In managing their caseloads, district courts are entitled to—indeed they must—enforce deadlines.") (citation and internal quotation marks omitted); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 605 (7th Cir. 2006) ("Rule 6(b) … clearly gives courts both the authority to establish deadlines and the discretion to

1

enforce them."); *Shine v. Owens-Ill., Inc.*, 979 F.2d 93, 96 (7th Cir. 1992) ("[J]udges must be able to enforce deadlines.") (citation omitted).

Consistent with Local Rule 56.1, the City filed a Local Rule 56.1(a)(3) statement of undisputed facts along with its summary judgment motion. Doc. 229. Each factual assertion in the Local Rule 56.1(a)(3) statement cites evidentiary material in the record and is supported by the cited material. *See* N.D. Ill. L.R. 56.1(a) ("The statement referred to in (3) shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph."). The City also filed and served on Johnson a Local Rule 56.2 Notice, which explains in detail for *pro se* litigants the requirements of Local Rule 56.1. Doc. 230.

Local Rule 56.1(b)(3)(B) required Johnson to file a "concise response to [the City's Local Rule 56.1(a)(3)] statement … contain[ing] a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." N.D. Ill. L.R. 56.1(b)(3)(B). But Johnson filed nothing—no brief, no Local Rule 56.1(b)(3)(B) response to the City's Local Rule 56.1(a)(3) statement, and no Local Rule 56.1(b)(3)(C) statement of additional facts. *See* N.D. Ill. L.R. 56.1(b) ("Each party opposing a motion filed pursuant to Fed. R. Civ. P. 56 *shall* serve and file—(1) any opposing affidavits and other materials referred to in Fed. R. Civ. P. 56(e); (2) a supporting memorandum of law; and (3) a concise response to the movant's [Local Rule 56.1(a)(3)] statement") (emphasis added). The Seventh Circuit "has consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Flint*, 791 F.3d at 767 (citing cases); *see also Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant

evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings."); *Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 360 (7th Cir. 2009) (same); *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004) (same). Johnson's *pro se* status does not excuse him from complying with Local Rule 56.1. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 F. App'x 642, 643 (7th Cir. 2011) ("Though courts are solicitous of pro se litigants, they may nonetheless require strict compliance with local rules."); *Wilson v. Kautex, Inc.*, 371 F. App'x 663, 664 (7th Cir. 2010) ("[S]trictly enforcing Local Rule 56.1 was well within the district court's discretion, even though Wilson is a pro se litigant.") (citation omitted); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) ("[E]ven *pro se* litigants must follow rules of civil procedure.").

Here, the problem is not that Johnson failed to *strictly* comply with Local Rule 56.1(b)(3)(B); rather, it is that he did not comply *at all*. Accordingly, as the local rules provide, the court accepts as true the facts set forth in the City's Local Rule 56.1(a)(3) statement. *See* N.D. Ill. L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218 (7th Cir. 2015) ("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion.") (citation omitted); *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 393 (7th Cir. 2009) ("In accordance with [Local Rule 56.1(b)(3)(C)], the district court justifiably deemed the factual

3

assertions in BP's Rule 56.1(a) Statement in support of its motion for summary judgment admitted because Rao did not respond to the statement."). That said, the court is mindful that "a nonmovant's failure to respond to a summary judgment motion or failure to comply with Local Rule 56.1 … does not … automatically result in judgment for the movant. [The movant] must still demonstrate that it is entitled to judgment as a matter of law." *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012) (citations omitted). The court therefore will recite the facts in the City's Local Rule 56.1(a)(3) statement as favorably to Johnson, the nonmovant, as the record and Local Rule 56.1 allow, *see Canen v. Chapman*, 847 F.3d 407, 412 (7th Cir. 2017), and then will determine whether, on those facts, the City is entitled to summary judgment. In considering the City's motion, the court must assume the truth of those facts, but does not vouch for them. *See Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 281 (7th Cir. 2015).[*]

On August 2, 2013, at approximately 11:45 p.m., Jarosz and fellow Chicago police officer Ryan Harty attempted to effect a traffic stop of a car traveling southbound in an alley between South Halsted Street and South Emerald Avenue on Chicago's South Side. Doc. 229 at ¶¶ 11-12. The car stopped just before it reached 78th Street, and several individuals exited the car onto 78th and fled from the police on foot. *Id*. at ¶¶ 13-15. After losing sight of those individuals, one of the officers radioed for help. *Id*. at ¶¶ 16-17. At the time, Chicago police officer Armando Garza was returning to the 6th District Police Station, located at the corner of

---

[*] Johnson himself filed several summary judgment motions, Docs. 26, 60, 64, 103, 113, 144, 147, 199, 201, 211, 221, most denied without prejudice for failure to comply with Local Rule 56.1, Docs. 63, 106, 146, 203, 214, and some denied on the merits, Doc. 28, 65, 150, 225. The denials for failure to comply with Local Rule 56.1 followed the court's practice of screening summary judgment motions, whether filed by counseled or *pro se* parties, and denying without prejudice those that facially violate Local Rule 56.1. *See*, *e.g.*, *Coleman v. McLanathan*, No. 15 C 3675, Dkt. 48 (Mar. 8, 2016); *J & J Sports Productions, Inc. v. Bruscianelli*, No. 14 C 3084, Dkt. 28 (Mar. 16, 2015); *Lipton v. Chattem, Inc.*, No. 11 C 2952, Dkt. 73 (Nov. 15, 2012).

4

Halsted Street and 78th. *Id.* at ¶ 8. Garza had his radio with him and was monitoring radio calls. *Id.* at ¶ 18. Soon after Garza entered the station, he heard the call made by either Harty or Jarosz. *Ibid.* Garza left the station, saw Harty and Jarosz's patrol car across the street, looked northbound up Halsted, and saw two men running away, with at least one officer in pursuit. *Id.* at ¶¶ 18-19. Garza heard on the radio that the car's former occupants were running westbound toward the 6th District station's parking lot, and that at least one—identified as a man wearing dark-colored baggy shorts and a braid—had doubled back across the parking lot. *Id.* at ¶¶ 20, 22.

At that point, Garza saw Johnson, who matched the description of the car occupant with baggy shorts and a braid, walking swiftly on Halsted away from the parking lot and looking over his left shoulder in the direction of the corner of Halsted and 78th. *Id.* at ¶¶ 25-26. Johnson was carrying a stolen firearm with a loaded clip in the waistband of his pants. *Id.* at ¶¶ 27-28. When Johnson noticed Garza, Johnson slowed his pace and appeared startled. *Id.* at ¶ 31. Garza followed Johnson, approaching him from behind. *Ibid.* Garza said "Hey," in an effort to communicate that he wanted to conduct a field interview. *Id.* at ¶ 32. Johnson, appearing agitated and nervous, responded: "Can I help you?" *Id.* at ¶¶ 34-35. After saying "yes," Garza asked Johnson if he had any weapons on him. *Id.* at ¶ 36. Johnson admitted he did. *Ibid.*

Garza then asked Johnson to place his hands on a fence. *Id.* at ¶ 37. Johnson complied, and Garza patted him down for weapons, discovering a .380-caliber handgun, fully loaded with seven live rounds. *Id.* at ¶¶ 37-38. Johnson had neither a FOID card nor a concealed carry permit. *Id.* at ¶ 44. After finding the gun, Garza placed Johnson in handcuffs and radioed in a physical description. *Id.* at ¶ 39. Jarosz arrived at the scene and identified Johnson as one of the men who had fled the attempted traffic stop. *Id.* at ¶¶ 42-43. Johnson was then taken to the station, where Jarosz completed an arrest and case report. *Id.* at ¶¶ 45-46. After conferring with

5

a Cook County Assistant State's Attorney, Jarosz signed a criminal complaint against Johnson for unlawful possession of a firearm. *Id*. at ¶¶ 51-53.

## Discussion

As the court explained in its prior opinion, under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691 (1978), a municipality is not liable for constitutional violations of its employees based on a *respondeat superior* theory. Rather, to prevail on a *Monell* claim, the plaintiff must show that "a government's policy or custom" is responsible for the constitutional injury. *Id.* at 694. Moreover, the plaintiff must allege "that an official policy or custom not only caused the constitutional violation, but was the moving force behind it." *Estate of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007) (citation and internal quotation marks omitted). "An official policy or custom may be established by means of [1] an express policy, [2] a widespread practice which, although unwritten, is so entrenched and well-known as to carry the force of policy, or [3] through the actions of an individual who possesses the authority to make final policy decisions on behalf of the municipality or corporation." *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012); *see also Milestone v. City of Monroe*, 665 F.3d 774, 780 (7th Cir. 2011). *Monell* liability may be based on failure to train, but only where "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

The City contends that Johnson cannot satisfy *Monell* because he fails even to show a constitutional violation, let alone one caused by a City policy or practice. Doc. 228 at 5-10. But even assuming that Garza's actions deprived Johnson of his Fourth Amendment rights, the summary judgment record, drawing all permissible inferences in Johnson's favor, contains no

6

basis on which to attribute that deprivation to a City policy or practice. Nor does the summary judgment record contain any basis on which to conclude that Garza acted at the relevant time as a policymaker for the City. In fact, the summary judgment record contains no evidence whatsoever of any City policies or practices, nor any evidence that Garza had policymaking authority for the City. Consequently, because no reasonable juror could conclude from the summary judgment record that Johnson could satisfy any of the three ways to establish *Monell* liability, the City is entitled to summary judgment.

## Conclusion

For the foregoing reasons, the City's summary judgment motion is granted. With all claims having been dismissed, final judgment will be entered.

October 6, 2017

United States District Judge